IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **RYMED TECHNOLOGIES, INC. AND DENISE MACKLIN,**<br>    **PLAINTIFFS,**<br>**V.**<br>**ICU MEDICAL, INC.,**<br>    **DEFENDANT**<br>_____<br>**ICU MEDICAL, INC.,**<br>    **COUNTERCLAIMANT,**<br>**V.**<br>**RYMED TECHNOLOGIES, INC.,**<br>    **COUNTERDEFENDANT.** | Civil Action No. 3:10-cv-1067<br><br>**Judge Sharp**<br>**Magistrate Judge Bryant** |

## MEMORANDUM OF LAW IN SUPPORT OF
## RYMED TECHNOLOGIES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT
_____

Pursuant to Local Rule 7.01(a), RyMed Technologies, Inc. ("RyMed") respectfully submits this memorandum of law in support of its Motion for Partial Summary Judgment.

### I.   CONCISE STATEMENT OF THE ISSUES

This Motion seeks to streamline the issues that the Court will need to resolve at trial. In this non-jury action, ICU asserts two causes of action against RyMed in its First Amended Counterclaim: (1) federal unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and (2) unfair and deceptive acts and practices under the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101, *et seq*.[1]  ICU's prayer for relief requests preliminary and permanent injunctions to restrain RyMed from making certain

---
[1] (First Amended Counterclaim ¶¶ 83-98, DE #40.)

statements and engaging in certain acts or practices.[2]  ICU is not seeking damages for its counterclaims.[3]

The Court may eliminate the vast majority ICU's claims regarding the challenged statements and practices.[4]  As explained in detail below and as summarized in the comprehensive table attached as **Appendix A** to this Memorandum, the Court may eliminate most of ICU's claims on one or more of the following grounds:

1. RyMed has mooted many of the claims by making an offer of judgment to cease making the challenged statements and practices;

2. Some of the challenged statements were isolated, one-time occurrences that are not actionable under the Lanham Act and for which ICU lacks Article III standing under both the Lanham Act and the TCPA; and

3. Res judicata bars ICU from complaining about several of RyMed's statements or, similarly, ICU has waived these claims because it chose not to assert those compulsory counterclaims in prior litigation between the parties in California.

In addition to identifying which legal grounds apply to which claims, Appendix A provides citations to the relevant evidence in the record that establishes, for each particular claim, on what grounds RyMed is entitled to judgment as a matter of law.

---

[2] (*Id.* Part IV Requested Relief ¶¶ 1-2.)
[3] (*See id.* Part IV Requested Relief.)
[4] Additionally, RyMed's Partial Motion to Dismiss (DE #41) regarding RyMed's representations concerning the effect of the jury verdict in the Delaware Action is still pending before the Court.

562929.6   08287-003

2

Case 3:10-cv-01067   Document 86   Filed 12/13/11   Page 2 of 20 PageID #: 1677

## II. FACTUAL BACKGROUND

### A. RyMed Has Made a Rule 68 Offer of Judgment to ICU to Cease Most of the Challenged Conduct.

On November 28, 2011, RyMed sent ICU an Offer of Judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure.[5] Tracking verbatim the language in ICU's requested relief as set forth in its First Amended Counterclaim, RyMed offered to cease making most of the challenged statements and engaging in most of the challenged practices.[6]

Specifically, RyMed offered to enter into a Stipulated Judgment for injunctive and declaratory relief to stop making the following statements. As set forth in Appendix A, the statements are numbered to match ICU's prayer for relief: 1.b, 1.c, 1.d, 1.e, 1.f, 1.g, 1.h, 1.i, 1.j, 1.l, 1.m, 1.n, 1.o, 1.p, 1.q, 1.r, 1.s, 1.t, 1.u, 1.w, 1.x, 1.y, 3.a, 3.b, 3.c, 3.d, 3.e, 3.f, 3.g, 3.h, 3.i, 3.k, 3.l, 3.m, 3.n, 3.o, 3.p, 3.q, 3.r, 3.s, 3.u, and 3.v. RyMed also offered to stop engaging in the practices numbered 2.b, 2.c, 4.b, and 4.c.[7]

Additionally, RyMed offered to cease and/or modify making certain statements and engaging in certain practices so long as ICU accepted similar prohibitions or changes to its statements and marketing practices.[8] Those statements and practices are numbered 1.a, 2.a.1, 2.a.2, 2.a.3, 2.a.4, 2.a.5, 2.a.6, and 4.a.[9] RyMed offered to pay the costs of this action then accrued and offered that the Court would not make any finding of liability in the order.[10] RyMed offered that the Court would retain jurisdiction to enforce the terms of the order prohibiting the

---

[5] (Aff. of Michael G. Abelow ¶ 2 & Ex. 1.)
[6] (Aff. of Michael G. Abelow, Ex. 1.)
[7] (*Id.*)
[8] (*Id.*)
[9] (*Id.*) For purposes of this Motion, RyMed has conservatively assumed that its Rule 68 offer has not mooted these particular claims, and they are not included as such in the analysis in Section III.B *infra*. Nor are they reflected as moot in Appendix A.
[10] (Aff. of Michael G. Abelow, Ex. 1.)

enumerated statements and practices as well as to resolve any future disputes over whether statements based on new science violate that order, the Lanham Act, or the TCPA.[11]

### B. Some of ICU's Claims Challenge Isolated, One-Time Statements by RyMed.

Some of the challenged statements were isolated occurrences. As set forth in Appendix A, those statements include numbers 1.g and 3.f. Statement 1.g was an isolated occurrence.[12] Statement 3.f was also an isolated occurrence.[13] Denise Macklin, RyMed's Clinical Education Manager, allegedly made these statements during hour-long presentations that she gave at industry conferences to small audiences of between ten to thirty nurses.[14] No one made those statements or substantially similar statements on behalf of RyMed again.[15] Those statements are not part of RyMed's marketing.[16] By comparison, the total number of potential customers for needleless IV connectors is much greater than the size of the limited audiences at those presentations.[17] There are thousands of hospitals, clinics, and physician practice groups that purchase these products.[18]

### C. The Factual Basis for Some of ICU's Claims Existed During an Earlier Lawsuit Between ICU and RyMed Concerning the InVision-Plus.

From October 2007 to October 2009, ICU and RyMed were opposing parties in litigation in federal district court in California (the "California Action").[19] In the California Action,

---

[11] (*Id.*)

[12] (Aff. of Denise Macklin ¶¶ 4-7; Aff. of Michael G. Abelow, Ex. 6 – D. Macklin Depo. 61:12 to 62:6; Aff. of D. Scott Chase ¶¶ 7-13.)

[13] (Aff. of Denise Macklin ¶¶ 4-7; Aff. of D. Scott Chase ¶¶ 7-13.)

[14] (Aff. of Denise Macklin ¶¶ 3-7.)

[15] (Aff. of Denise Macklin ¶ 6; Aff. of Michael G. Abelow, Ex. 6 – D. Macklin Depo. 61:12 to 62:6; Aff. of D. Scott Chase ¶¶ 7-13.)

[16] (Aff. of D. Scott Chase ¶ 13.)

[17] (Aff. of Dana W. Ryan ¶ 7.)

[18] (*Id.*)

[19] *See RyMed Tech., Inc. v. ICU Med., Inc.*, 8:07-cv-01199 (C.D. Cal). The complaint was filed on October 10, 2007, *see id.*, DE #1, and the final amended complaint was filed on October 30, 2008, *see id.*, DE #85. The district court issued its final substantive order on October 8, 2009. *See id.*, DE #336.

RyMed claimed that a broad range of ICU's statements about the InVision-Plus constituted false advertising under the Lanham Act.[20] ICU counterclaimed that RyMed's "neutral" trademark for the InVision-Plus was invalid.[21] ICU chose not to claim that any of RyMed's statements about the InVision-Plus constituted false advertising.[22] ICU filed its final amended counterclaim on November 12, 2008.[23] Over the course of the California Action, the district court spent significant time and resources familiarizing itself with the InVision-Plus, the applicable science, and the needleless IV connectors industry. The district court then adjudicated the parties' claims on the merits.[24]

Before ICU filed its final amended counterclaim in the California Action on November 12, 2008, RyMed was making four of the statements about the InVision-Plus that ICU now challenges in this lawsuit. Indeed, RyMed was making three of the four statements before RyMed even filed its initial complaint on October 10, 2007.

- *"The InVision-Plus has a 'double microbial barrier'" (statement 1.v)* – RyMed has been making this statement since June 2006.[25]

- *"The tightness of the InVision-Plus septum provides additional protection against microbial contamination" (statement 3.t)* – since June 2006.[26]

- *"The InVision-Plus reduces CR-BSIs" (statement 1.a)* – since February 2007.[27]

- *"The InVision-Plus has zero fluid displacement upon connection and/or disconnection" (statements 1.k and 3.j)* – since February 2008.[28]

---

[20] *See, e.g.*, *id.*, DE #289 at p.2. Specifically, RyMed objected to ICU's statements about the InVision-Plus regarding coring, off-label use, microbial integrity, leaking, product trials, and compatibility.
[21] *See id.*, DE #182, at pp. 1-3.
[22] *See id.*, DE #91.
[23] *See id.*, DE #91.
[24] *See id.*, DE ##182, 289.
[25] (Aff. of Dana W. Ryan ¶ 5.a & Ex. 1.)
[26] (Aff. of Dana W. Ryan ¶ 5.a & Ex. 1.)
[27] (Aff. of Dana W. Ryan ¶ 5.b & Ex. 2.)

Since RyMed first made each statement, RyMed has been making that statement publicly, prominently, and frequently to customers at trade shows, in presentations to healthcare providers, and in a variety of printed marketing materials.[29] These marketing materials are ubiquitous.[30] RyMed has disseminated them to potential customers at trade shows and in presentations to healthcare providers, often in close proximity to ICU sales representatives.[31]

Furthermore, ICU had actual knowledge that RyMed was making these statements during the California Action. For example, correspondence between ICU's counsel and RyMed's counsel during the California Action discusses in detail RyMed's advertisements regarding how the InVision-Plus "reduces CR-BSIs" (statement 1.a), causes "zero displacement" (statements 1.k/3.j), and contains a "double microbial barrier" (statement 1.v).[32] Thus, ICU plainly was aware of both the existence of these statements and their arguable legal implications during the California Action. And yet, although ICU asserted a counterclaim in that case, it did not include false advertising claims based on these allegedly false statements.[33]

Additionally, during the present lawsuit, ICU has persistently acknowledged and trumpeted the application of res judicata to the issues of false advertising.[34] ICU raised res judicata as an affirmative defense to RyMed's claims.[35] ICU has attempted to use res judicata as

---

[28] (*See* Aff. of D. Scott Chase ¶ 4.a & Ex. 1.) RyMed based its statements regarding zero displacement on test results from Nelson Laboratories dated 2005. (*Id.* ¶ 6; *see also* Aff. of Michael G. Abelow, Ex. 5 – Nelson Laboratories report.)
[29] (Aff. of Dana W. Ryan ¶¶ 5-6; Aff. of D. Scott Chase ¶¶ 4-5.)
[30] (Aff. of Dana W. Ryan ¶¶ 5-6; Aff. of D. Scott Chase ¶¶ 4-5.)
[31] (Aff. of Dana W. Ryan ¶¶ 5-6; Aff. of D. Scott Chase ¶¶ 4-5.)
[32] (*See* Aff. of Michael G. Abelow ¶ 3, Ex. 2 - Letter from S. Wales to R. Kohut dated March 4, 2009.)
[33] *See RyMed Tech., Inc. v. ICU Med., Inc.*, 8:07-cv-01199 (C.D. Cal), DE #91 (ICU's Final Amended Counterclaim).
[34] (*See* Aff. of Michael G. Abelow ¶¶ 4-5, Ex. 3 & 4.)
[35] (DE #40 – ICU's First Amended Counterclaim, Sixth Affirmative Defense.)

562929.6  08287-003

a shield to limit its discovery responses.[36] ICU's counsel has even stated that "[a]ny false advertising claims that existed during the pendency of the California Action could and should have been raised in that action."[37]

### III. ARGUMENT

#### A. Summary Judgment Standard.

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In this case, the evidence establishes that there is no need for a trial on many of the statements and practices that ICU has challenged.

#### B. RyMed Has Mooted the Need for Injunctive Relief for the Majority of the Statements and Practices that ICU Challenges.

RyMed has rendered moot ICU's claims for injunctive relief for the majority of the statements and practices that ICU challenges. The Court should dismiss these claims for lack of subject matter jurisdiction. *UAW v. Dana Corp.*, 697 F.2d 718, 720-21 (6th Cir. 1983) ("Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.") (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

---

[36] (*See* Aff. of Michael G. Abelow, Ex. 3. ICU's Responses to RyMed's First Request for Production of Documents object to certain requests on the basis that they seek documents related to communications by ICU that "predate the conclusion of the California Action between RyMed and ICU and with respect to which any potential claim by RyMed is barred by the doctrines of collateral estoppel or res judicata.")

[37] (Aff. of Michael G. Abelow, Ex. 4, p. 2.)

A Rule 68 offer of judgment that satisfies the opposing party's demand moots the claims included in the offer. *See O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 574 (6th Cir. 2009) (affirming district court's dismissal of Counts I and II as moot in view of offer of judgment). "Rule 68 offers are much more common in money cases than in equity cases, but nothing in the rule forbids its use in the latter type of case." *Chathas v. Local 134 IBEW*, 233 F.3d 508, 511 (7th Cir. 2000); *see also Andretti v. Borla Performance Indus.*, 426 F.3d 824, 830 (6th Cir. 2005) (affirming district court's decision that defendant's offer to enter a permanent injunction mooted plaintiff's claims). In other words, when a Rule 68 offer of judgment offers to cease conduct that the plaintiff seeks to enjoin, the plaintiff's claims are then moot "because there is nothing left for the plaintiffs to win." *Pettrey v. Enter. Title Agency*, 584 F.3d 701, 703 (6th Cir. 2009).

A party need not admit liability in its Rule 68 settlement offer to moot claims for injunctive relief. *See Chathas*, 233 F.3d at 512 ("[A] party [cannot] force his opponent to confess to having violated the law, as it is always open to a defendant to default and suffer judgment to be entered against him without his admitting anything."). In *Chathas*, the plaintiffs moved for a preliminary injunction under the Taft-Hartley Act. *Id.* at 511. In response, the defendants submitted a Rule 68 settlement offer: "The essence of the offer was that the preliminary injunction would be made permanent, but that the offer was not to be construed as an admission of liability." *Id.* The plaintiffs rejected the offer. *Id.* The defendants—not the plaintiffs—then moved the district court to enter a permanent injunction. *Id.* The court did so, whereupon the defendants moved the court to dismiss the suit as moot. *Id.* The plaintiffs objected, arguing that they were entitled to a finding that the defendants had violated the law. *Id.* The district judge granted the motion to dismiss the suit as moot on the ground that the entry of the permanent injunction had eliminated the controversy between the parties. *Id.*

The plaintiffs acknowledged that their principal dissatisfaction with the permanent injunction that the district court entered was the absence of a finding of illegality, which they wanted "to brandish in their continuing struggle with [the defendant]." *Id.* at 512. Affirming the district court, the Seventh Circuit found that gripe was not valid because the "plaintiffs had got all they were entitled to . . . given that the injunction is valid and prohibits exactly the same conduct that the plaintiffs wanted it to prohibit." *Id.* at 513. "[I]f the defendant has thus thrown in the towel there is nothing left for the district court to do except enter judgment. The absence of a controversy in the constitutional sense precludes the court from issuing an opinion on whether the defendant actually violated the law." *Id.* at 512.

Here, RyMed's Rule 68 offer of judgment has mooted ICU's claims for injunctive relief for the vast majority of the statements and practices that ICU challenges. RyMed offered to stop making the statements numbered 1.b, 1.c, 1.d, 1.e, 1.f, 1.g, 1.h, 1.i, 1.j, 1.l, 1.m, 1.n, 1.o, 1.p, 1.q, 1.r, 1.s, 1.t, 1.u, 1.w, 1.x, 1.y, 3.a, 3.b, 3.c, 3.d, 3.e, 3.f, 3.g, 3.h, 3.i, 3.k, 3.l, 3.m, 3.n, 3.o, 3.p, 3.q, 3.r, 3.s, 3.u, and 3.v. RyMed also offered to stop engaging in the practices numbered 2.b, 2.c, 4.b, and 4.c.[38] For these statements and practices, there is nothing left for ICU to win. *See Pettrey*, 584 F.3d at 703. ICU cannot force RyMed to confess to violating the Lanham Act or the TCPA just so that it may brandish such a judgment to customers in its continuing competition with RyMed. *See Chathas*, 233 F.3d at 512. Nor can the Court render an opinion on liability issues, as there is no live controversy in the constitutional sense. *Id.* The Court should simply enter judgment in accordance with RyMed's Rule 68 offer. *See O'Brien*, 575 F.3d at 575.

### C. RyMed's Isolated Statements Are Not Actionable.

Additionally, no trial is needed as to RyMed's isolated statements. First, those statements are not actionable under the Lanham Act because they are not an "advertising or promotion."

---

[38] (Aff. of Michael G. Abelow, Ex. 1.)

Second, under both the Lanham Act and the TCPA, ICU lacks Article III standing to enjoin those statements because ICU faces no likelihood of future injury.

### 1. Isolated Statements Are Not Actionable under the Lanham Act.

Section 43(a) of the Lanham Act applies only to a false or misleading "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). To qualify, the challenged statement "must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56 (2d Cir. 2002); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999); *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996); *Champion Labs., Inc. v. Parker-Hannifin Corp.*, 616 F. Supp. 2d 684, 694 (E.D. Mich. 2009); *White Mule Co. v. ATC Leasing Co. LLC*, 540 F. Supp. 2d 869, 897 (N.D. Ohio 2008).

Put differently, the challenged statement must be made to a substantial fraction of potential customers to be actionable as false advertising under the Lanham Act. *Compare Coastal Abstract Serv., Inc.*, 173 F.3d at 735 (actionable when statement was made to 1 of 3 potential customers); *Seven-Up Co.*, 86 F.3d at 1386 (actionable when statement was made to 11 of 74 potential customers), *with Sports Unlimited, Inc. v. Lankford Enters., Inc.*, 275 F.3d 996, 1004 (10th Cir. 2002) (not actionable when statement was made to 2 customers and defendant submitted 150 bids per year); *Fashion Boutique*, 314 F.3d at 48 (not actionable when there were thousands of potential customers but statement was made only 27 times).

"[T]he contested representations [must be] part of an organized campaign to penetrate the relevant market. Proof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement. *Thus, businesses harmed by isolated disparaging statements do not have redress under the Lanham Act* . . . ." *Id.* at 47 (emphasis added); *see*

*generally Ultra-Temp Corp. v. Advanced Vacuum Sys., Inc.*, 27 F. Supp. 2d 86, 91-94 (D. Mass. 1998) (isolated statements are not actionable under the Lanham Act) (citing numerous cases).

Here, some of the challenged statements were isolated occurrences. As set forth in Appendix A, those statements include numbers 1.g[39] and 3.f.[40] RyMed's Clinical Education Manager allegedly made these statements during hour-long presentations that she gave at industry conferences to small audiences of between ten to thirty nurses.[41] No one made those statements or substantially similar statements on behalf of RyMed again,[42] and those statements are not part of RyMed's marketing campaign.[43] These isolated presentations to small groups of nurses do not constitute widespread dissemination within the needless IV connector industry by any means. Comparatively speaking, those small groups of nurses represent only a tiny fraction of the total number of potential customers for needleless IV connectors: there are thousands of hospitals, clinics, and physician practice groups that purchase these products.[44]

Accordingly, no genuine dispute of material fact exists that would permit ICU to prevail on statements 1.g and 3.f under the Lanham Act.

### 2. ICU Lacks Standing to Challenge the Isolated Statements.

A plaintiff lacks Article III standing to seek an injunction where there is no likelihood of future injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103-06 (1983); *Taylor v. Michigan Dept. of Natural Res.*, 502 F.3d 452, 465 (6th Cir. 2007) (citing *Lyons*).[45]

---

[39] (*See* Aff. of Denise Macklin ¶¶ 4-7; Aff. of Michael G. Abelow, Ex. 6 – D. Macklin Depo. 61:12 to 62:6; Aff. of D. Scott Chase ¶¶ 7-13.)
[40] (*See* Aff. of Denise Macklin ¶¶ 4-7; Aff. of D. Scott Chase ¶¶ 7-13.)
[41] (Aff. of Denise Macklin ¶¶ 3-7.)
[42] (Aff. of Denise Macklin ¶ 6; Aff. of Michael G. Abelow, Ex. 6 – D. Macklin Depo. 61:12 to 62:6; Aff. of D. Scott Chase ¶¶ 7-13.)
[43] (Aff. of D. Scott Chase ¶ 13.)
[44] (Aff. of Dana W. Ryan ¶ 7.)
[45] Although the issue in *Lyons* reached the Supreme Court in the context of the plaintiff's civil-rights claim—that a police department should be enjoined from putting him in a chokehold, when a single officer in that department once had put him in a chokehold, *Lyons*, 461 U.S. at

"It is black-letter law that standing is a claim-by-claim issue." *Rosen v. Tennessee Com'r of Fin. & Admin.*, 288 F.3d 918, 928 (6th Cir. 2002); *accord Friends of St. Frances Xavier Cabrini Church v. Fed. Emergency Mgmt. Agency*, 658 F.3d 460, 466 (5th Cir. 2011); *Valley Outdoor, Inc. v. City of Riverside*, 446 F.3d 948, 952 (9th Cir. 2006). Thus, a party may possess standing as to some of its claims, but lack standing as to others.

ICU faces no likelihood of future injury from RyMed's isolated statements. There is no likelihood of RyMed making those statements again,[46] and hence no likelihood of future injury to ICU. As such, under *Lyons* and its progeny, ICU lacks Article III standing to ask the Court to enjoin RyMed from making those statements.

### D. Res Judicata Bars Some of ICU's Claims.

Res judicata prevents a party from raising claims that it should have litigated in an earlier lawsuit between the same two parties. *See Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009). "For res judicata to apply, the following elements must be present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Id.*

All four elements of res judicata are satisfied here. The first and second elements are plainly satisfied because the federal district court in California issued a final judgment on the merits in a prior dispute between the same parties, RyMed and ICU.[47] The following two subsections demonstrate that the third and fourth elements, respectively, are also satisfied.

---

103-06—the Court's analysis neither expressly nor impliedly limited itself to civil-rights or constitutional claims. And whether Article III confers standing over the enjoining of highly improbable conduct should not turn on the source of the right or the type of the claim.

[46] (Aff. of Denise Macklin ¶ 6; Aff. of Michael G. Abelow, Ex. 6 – D. Macklin Depo. 61:12 to 62:6; Aff. of D. Scott Chase ¶¶ 7-13.)

[47] *See RyMed Tech., Inc. v. ICU Med., Inc.*, 8:07-cv-01199 (C.D. Cal), DE #289.

### 1. ICU Should Have Litigated Its False Advertising Claims in the Prior Lawsuit Because the Factual Bases of Those Claims Existed at That Time.

A party should have litigated a claim in an earlier lawsuit when the claim *could have been litigated* at that time. *See Wilkins v. Jakeway*, 183 F.3d 528, 532 n.4 (6th Cir. 1999) ("Plaintiff briefly argues that although both cases could have been litigated in the same action, it is questionable whether they should have been litigated in the same case. We can summarily reject this argument."); *Sidney Coal Co., Inc. v. Massanari*, 221 F. Supp. 2d 755, 774 (E.D. Ky. 2002) ("[A] plaintiff is precluded from litigating issues that could have been or should have been raised in an earlier action."); *see also Walker v. Gen. Tel. Co.*, 25 F. App'x 332, 336 (6th Cir. 2001) (analyzing whether the claim *could have been raised* in the first lawsuit).

A claim could have been litigated when its factual basis existed at the time of the earlier lawsuit—regardless of whether or not the precluded party was aware of it. *See, e.g.*, *Matter of Howe*, 913 F.2d 1138, 1147 (5th Cir. 1990); *Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986) ("Actual knowledge of a potential claim is not a requirement for application of [res judicata]."). As long as the facts giving rise to the claim were discoverable and not concealed by the opposing party in the earlier lawsuit, the claim could have been litigated for the purposes of res judicata. *See, e.g.*, *Oreck Direct, LLC v. Dyson, Inc.*, 544 F. Supp. 2d 502, 510 (E.D. La. 2008) ("[I]gnorance of a potential claim, when there is no showing that the facts giving rise to that claim were undiscoverable or somehow concealed from the plaintiff, is insufficient to halt the preclusive effect of the doctrine of res judicata.").

Before ICU filed its final amended counterclaim in the California Action on November 12, 2008,[48] RyMed was making four of the statements about the InVision-Plus that ICU now

---

[48] *See id.*, DE #1.

challenges in this lawsuit. Indeed, RyMed was making three of the four statements before RyMed even filed its initial complaint on October 10, 2007.[49]

- "*The InVision-Plus has a 'double microbial barrier'* " *(statement 1.v)* – RyMed has been making this statement since June 2006.[50]

- "*The tightness of the InVision-Plus septum provides additional protection against microbial contamination*" *(statement 3.t)* – since June 2006.[51]

- "*The InVision-Plus reduces CR-BSIs*" *(statement 1.a)* – since February 2007.[52]

- "*The InVision-Plus has zero fluid displacement upon connection and/or disconnection*" *(statements 1.k and 3.j)* – since February 2008.[53]

RyMed based its statements regarding zero displacement on test results from Nelson Laboratories dated 2005.[54] Since RyMed first made each statement, RyMed has been making that statement publicly, prominently, and frequently to customers at trade shows, in presentations to healthcare providers, and in a variety of printed marketing materials.[55] These marketing materials are ubiquitous.[56] RyMed has disseminated them to potential customers at trade shows and in presentations to healthcare providers, often in close proximity to ICU sales representatives.[57]

Moreover, ICU had actual knowledge of these facts and their potential legal ramifications. Correspondence between ICU's counsel and RyMed's counsel during the California Action discusses in detail RyMed's advertisements regarding how the InVision-Plus

---

[49] *See id.*, DE #91.
[50] (Aff. of Dana W. Ryan ¶ 5.a & Ex. 1.)
[51] (Aff. of Dana W. Ryan ¶ 5.a & Ex. 1.)
[52] (Aff. of Dana W. Ryan ¶ 5.b & Ex. 2.)
[53] (*See* Aff. of D. Scott Chase ¶ 4.a & Ex. 1.)
[54] (*Id.* ¶ 6; *see also* Aff. of Michael G. Abelow, Ex. 5 – Nelson Laboratories report.)
[55] (Aff. of Dana W. Ryan ¶¶ 5-6; Aff. of D. Scott Chase ¶¶ 4-5.)
[56] (Aff. of Dana W. Ryan ¶¶ 5-6; Aff. of D. Scott Chase ¶¶ 4-5.)
[57] (Aff. of Dana W. Ryan ¶¶ 5-6; Aff. of D. Scott Chase ¶¶ 4-5.)

"reduces CR-BSIs" (statement 1.a), causes "zero displacement" (statements 1.k/3.j), and contains a "double microbial barrier" (statement 1.v).[58] The specific context was ICU's allegation that these statements constituted false advertising. The correspondence even discusses the 2005 displacement testing by Nelson Laboratories.[59] Although actual knowledge by ICU is not necessary for res judicata to bar its claims, that ICU was well aware of these statements provides further confirmation that ICU could and should have litigated them in the California Action.

> **2.  An Identity of the Causes of Action Exists Because ICU's False Advertising Claims Arose out of the Same Core of Operative Facts as RyMed's False Advertising Claims.**

The claims in the subsequent lawsuit involve the same causes of action as the earlier lawsuit when "the claims arose out of the same core of operative facts." *Browning v. Levy*, 283 F.3d 761, 773-74 (6th Cir. 2002); *accord Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 580 (6th Cir. 2008); *Cox v. Jackson*, 579 F. Supp. 2d 831, 845 (E.D. Mich. 2008).

The "same core of operative facts" standard closely resembles the standard for compulsory counterclaims, by which a defendant must assert or forever waive all claims that bear a "logical relationship" to the plaintiff's claims. *See, e.g.*, *Sanders v. First Nat. Bank & Trust Co. in Great Bend*, 936 F.2d 273, 277 (6th Cir. 1991). A defendant's claim is logically related to the plaintiff's claim "where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the court." *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961). Furthermore, in the Sixth Circuit, not only are these two standards similar, but the standard for res judicata is even broader than the standard for compulsory counterclaims. *See Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 483-84 (6th Cir. 1992) (holding that, for the purposes of the

---

[58] (Aff. of Michael G. Abelow ¶ 3, Ex. 2 – Letter from S. Wales to R. Kohut dated March 4, 2009).
[59] (*Id.*)

fourth element of res judicata, "what is important is not whether a particular claim is compulsory, but whether the claim should have been considered during the prior action").

The four statements that ICU challenges as false advertising, listed above, arose out of the same core of operative facts as RyMed's claims for false advertising in the California Action. In the California Action, RyMed claimed that many of ICU's statements about the InVision-Plus constituted false advertising under the Lanham Act.[60] Specifically, those statements involved the InVision-Plus's coring, off-label use, microbial integrity, leaking, product trials, and compatibility.[61] Thus, the core of operative facts in the California Action was whether statements about the InVision-Plus were accurate descriptions of its design and performance. ICU's counterclaims similarly revolved around the InVision-Plus: ICU argued that RyMed's "neutral" trademark for the InVision-Plus was invalid.[62] The court in the California Action spent significant time and resources familiarizing itself with the InVision-Plus, the applicable science, and the needleless IV connectors industry. Now, ICU objects to RyMed's statements about the same product—indeed, many of the same features of that same product. To permit ICU to adjudicate these claims will necessarily "involve a substantial duplication of effort and time by the parties and the court." *Great Lakes Rubber Corp.*, 286 F.2d at 634.

Similarly, ICU waived its false advertising claims based on these four statements by not asserting them in the California Action. *See Kane v. Magna Mixer Co.*, 71 F.3d 555, 562-63 (6th Cir. 1995) (holding that litigants who fail to assert compulsory counterclaims waive those claims in future litigation). ICU's claims were compulsory counterclaims in the California Action because their issues of law and fact were largely the same as RyMed's claims. *See Sanders*, 936 F.2d at 277 (holding that a claim is a compulsory counterclaim when "the issues of law and fact

---

[60] *See RyMed Tech., Inc. v. ICU Med., Inc.*, 8:07-cv-01199 (C.D. Cal), DE #289 at p.2.
[61] *See id.*, DE # 289 at p.2.
[62] *See id.*, DE #182, at pp. 1-3.

raised by the claims are largely the same"). The facts for both sets of claims involved statements about the InVision-Plus, and the law for both sets of claims involved false advertising under the Lanham Act.

### 3. The Same Analysis Applies to False Advertising Under the Lanham Act.

Many courts have applied the doctrine of res judicata to bar untimely claims of false advertising. When an earlier lawsuit between two companies includes allegations of false advertising, but one of the companies fails to claim that its competitor's statements were false advertising, that company is forever barred from challenging its competitor's statements in subsequent litigation. *See, e.g.*, *Oreck Direct, LLC v. Dyson, Inc.*, 544 F. Supp. 2d 502 (E.D. La. 2008), *aff'd*, 560 F.3d 398 (5th Cir. 2009); *see also Aquatherm Indus., Inc. v. Florida Power & Light Co.*, 84 F.3d 1388, 1394-95 (11th Cir. 1996); *Phillips v. Nat'l Basketball Ass'n*, 2:10-CV-14734, 2011 WL 3113109, at *2-4 (E.D. Mich. July 26, 2011) *Home Selling Assistance, Inc. v. Advance Realty, Inc.*, CIV.A.RDB-06-3397, 2008 WL 782473, at *5-6 (D. Md. Mar. 20, 2008).

*Oreck* is instructive. Oreck alleged that advertisements by Dyson, one of its competitors, were misleading and thus violated the Lanham Act. *See Oreck Direct, LLC*, 544 F. Supp. 2d at 504-05. Specifically, Oreck challenged Dyson's statements that one of Dyson's vacuum cleaners "did not lose suction" and was the "most powerful lightweight" vacuum cleaner. *Id.* Oreck asked the court to permanently enjoin Dyson from making those statements. *See id.* at 507. In an earlier lawsuit between the same two parties, however, Oreck had challenged similar statements made by Dyson with respect to other models of vacuum cleaners. *See id.* at 504-05. Dyson argued that Oreck's false advertising claims in the subsequent lawsuit were barred by res judicata, the district court granted summary judgment on that ground, *see id.*, and the Fifth Circuit affirmed, *see Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 403-04 (5th Cir. 2009).

The argument for res judicata is even stronger here. In *Oreck*, both the district court and the Fifth Circuit found that Oreck's claims were barred because Oreck could have raised them in the earlier litigation, despite the fact that the earlier litigation concerned a different product. *See id.* Here, not only could ICU have raised its claims in the California Action, but the statements that serve as the basis for those claims concern the *same product* (the InVision-Plus) as the statements in the California Action. These claims arise from an even tighter core of operative facts.

As noted above, ICU has continuously acknowledged and trumpeted the application of res judicata to the issues of false advertising in this litigation.[63] ICU raised res judicata as an affirmative defense to RyMed's claims.[64] ICU has attempted to use res judicata as a shield to limit its discovery responses.[65] ICU's counsel has even stated that "[a]ny false advertising claims that existed during the pendency of the California Action could and should have been raised in that action."[66] ICU cannot have it both ways.

\* \* \*

For these reasons, there exists no genuine dispute of material fact as to whether ICU's claims based on these four statements are barred by res judicata. RyMed is entitled to judgment as a matter of law.

## IV. CONCLUSION

The Court may eliminate most of ICU's claims on one or more grounds. RyMed has mooted most of the claims by making an offer of judgment to cease the challenged statements

---

[63] (Aff. of Michael G. Abelow ¶¶ 4-5, Ex. 3 & 4.)
[64] (DE #40 – ICU's First Amended Counterclaim, Sixth Affirmative Defense.)
[65] (Aff. of Michael G. Abelow, Ex. 3. ICU's Responses to RyMed's First Request for Production of Documents object to certain requests on the basis that they seek documents related to communications by ICU that "predate the conclusion of the California Action between RyMed and ICU and with respect to which any potential claim by RyMed is barred by the doctrines of collateral estoppel or res judicata.")
[66] (Aff. of Michael G. Abelow, Ex. 4, p. 2.)

and practices. Some of the challenged statements were isolated, one-time occurrences that are not actionable under the Lanham Act and for which ICU lacks Article III standing under both the Lanham Act and the TCPA. Res judicata also bars ICU from complaining about several of RyMed's statements because ICU chose not to assert claims based on those statements in prior litigation between the parties in California, or ICU waived these claims by failing to assert them as compulsory counterclaims in the California Action. For these reasons, this Court should grant RyMed's Motion for Partial Summary Judgment.

Respectfully submitted,

*/s/ Michael G. Abelow*
Samuel P. Funk (No. 19777)
Michael G. Abelow (No. 26710)
SHERRARD & ROE, PLC
150 3rd Avenue South, Suite 1100
Nashville, Tennessee 37201
sfunk@sherrardroe.com
mabelow@sherrardroe.com
(615) 742-4200
(615) 742-4539 (fax)

*Counsel for RyMed Technologies, Inc. & Denise Macklin*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and exact copy of the foregoing has been served upon the following via the Court's electronic filing system on this the 13th day of December, 2011:

Ronald J. Kohut, Esq.
Laura L. Kohut, Esq.
Kristyn E. Kohut, Esq.
KOHUT & KOHUT LLP
600 Anton Blvd, Suite 1075
Costa Mesa, CA 92626
ronald@kohutlaw.com
laura@kohutlaw.com
kristyn@kohutlaw.com

and

Jonathan O. Harris, Esq.
OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
401 Commerce Street, Suite 1200
Nashville, TN 37219
Jon.Harris@ogletreedeakins.com

*Counsel for ICU Medical, Inc.*

/s/ *Michael G. Abelow*
Michael G. Abelow